IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:20cr85-MHT |
| | ) | (WO) |
| DIEGO FAGUNDEZ | ) | |

**OPINION ON ADMISSABILITY OF CO-CONSPIRATOR STATEMENTS**

Defendant Diego Fagundez was convicted by a jury of conspiracy to distribute and to possess with intent to distribute methamphetamine. *See* 21 U.S.C. §§ 841(a)(1) & 846.

The issue before the court is the admissibility of co-conspirators' statements offered into evidence against Fagundez at trial, pursuant to Federal Rule of Evidence 801(d)(2)(E). Previously, at trial, the court made brief findings, concluding that the statements were admissible and promised that a more detailed opinion would follow. This is the promised opinion.

I. CO-CONSPIRATOR STATEMENTS

"A statement made by a coconspirator during the course and in furtherance of the conspiracy is admissible as nonhearsay under Federal Rule of Evidence 801(d)(2)(E)." *United States v. Byrom*, 910 F.2d 725, 734 (11th Cir. 1990). In order to admit a co-conspirator statement under this rule, the existence of a conspiracy and the defendant's participation in it are preliminary questions of fact that must be resolved by the court pursuant to Federal Rule of Evidence 104(a). *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). For each statement, "the government must prove by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy." *United States v. Underwood*, 446 F.3d 1340, 1345-46 (11th Cir. 2006). "In determining the admissibility of co-conspirator statements, the trial court may consider

both the co-conspirator's statements and independent external evidence." *United States v. Hasner*, 340 F.3d 1261, 1274 (11th Cir. 2003) (per curiam). In its discretion, the court may "admit the out-of-court statements on the condition that the government subsequently produce independent evidence" satisfying these three requirements. *United States v. McGregor*, 824 F. Supp. 2d 1339, 1343 (M.D. Ala. 2011) (Thompson, J.) (citing *United States v. Miller*, 664 F.2d 826, 827-28 (11th Cir. 1981) (per curiam)). In this case, the court, in its discretion, admitted any out-of-court statements of co-conspirators before all evidence of the conspiracy had been received.

### A. Existence of Conspiracy

"A conspiracy is an agreement between two or more persons to accomplish an unlawful plan." *United States v. Chandler*, 388 F.3d 796, 805 (11th Cir. 2004). "[A]greement is the essential evil at which the crime ... is directed." *Id.* at 806 (quoting *Iannelli v.*

3

*United States*, 420 U.S. 770, 777 n.10 (1975)).  "The agreement need not be shown to have been explicit" and "can instead be inferred from the facts and circumstances of the case."  *Iannelli*, 420 U.S. at 777 n.10.  The government may establish the existence of a conspiracy "through either direct or circumstantial evidence, such as inferences from the conduct of the alleged participants."  *United States v. Farris*, 77 F.3d 391, 394 (11th Cir. 1996).

The court found that the government met its burden to prove by a preponderance of the evidence the existence of a conspiracy including Ryan Nance, Eduardo Cervantes (also known as "Shorty"), and Fagundez.  Overwhelming evidence proved the existence of an unlawful agreement to possess with intent to distribute 50 grams or more of methamphetamine.  Cervantes brokered the purchase of methamphetamine by Nance who would travel from Alabama to Georgia to pick-up the narcotics.  Testimony at trial established that, on December 13, 2019, Nance was seen by federal law-enforcement officers meeting with an

4

individual in Georgia who placed a box in the trunk of his car. Nance's car was followed by law-enforcement officers into Alabama where it was stopped and the trunk was searched. Officers found the box, and it contained a substance that was later scientifically tested and found to be approximately 4,000 grams of methamphetamine. Nance testified that he ordered the methamphetamine from Cervantes utilizing phone calls and text messages. The calls and messages had been the subject of a court-authorized wiretap of Nance's phone. Several calls were played during the trial. Nance identified the participants as himself and "Shorty" who the evidence established was Cervantes. Nance testified that he knew the person that placed the drugs in his trunk as "Diego," Fagundez's first name.

The text messages, admitted at trial, between Nance and Cervantes on December 13, 2019, leading up to the seizure of the methamphetamine by law enforcement included the following:

>   "Cervantes -     Yoo my boo ready if yhu trying to come now
>
>   "Nance -         Ok cool give me a min and ima head that way.
>
>   "Cervantes -     Aite let me know when you on way bro? N did yhu get does 3 from B?
>
>   "Nance -         No I haven't seen him."

**Gov. Ex 1, page 227 of 307** (Government Exhibit 1 consists of a selection of text messages captured during the court-authorized wiretap of Nance's phone.  Although the pages of Exhibit 1 are not bate-stamped, many of them have a page number at the bottom right corner.)  They also included the following:

>   "Cervantes -     So wats going on dat would be gud to get dat from him it's more ticket towards diz 4
>
>   "Nance -         I know but I'd rather just drive it back over to you tomorrow or something cause you are closer to me than going to Montgomery and let his ass drive up here
>
>   "Nance -         If it's a big deal just send three I don't care I will make another trip it's al good with me that's a lot of money out

6

> "Cervantes -    I have to send four if not ok stuck with it. But dats find yhu can bring it tomorrow morning."

Gov. Ex 1, page 228 of 307.  They also included the following:

> "Nance -        I'm 10 mins away
>
> "Cervantes -    Ok
>
> "Cervantes -    His like 20 mins away if yhu want to get something to eat at da gas station
>
> "Cervantes -    He was at some job site but he on da way now."

Ex. 1, page 241 of 307.

Soon after the last message, Nance met Fagundez in Georgia.  Nance testified that during the above text message conversation, he and "Shorty" were discussing how many kilograms of methamphetamine Nance would pick up in Georgia and how much money Nance had collected from selling methamphetamine he had previously purchased from "Shorty."

7

The messages corroborated Nance's testimony that the methamphetamine law-enforcement officers found in his trunk was ordered from "Shorty," who then had an associate give it to Nance.  The government met its burden of establishing the existence of a conspiracy.

### B. Fagundez's Involvement

Proof of a defendant's involvement in a conspiracy requires "that the defendant knew about [the conspiracy] and that he voluntarily agreed to join it."  *Chandler*, 388 F.3d at 806 (emphasis omitted).  Like the existence of a conspiracy, a defendant's participation in a conspiracy "need not be proved by direct evidence" and "may be inferred from a development and collocation of circumstances."  *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014) (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)).  "There is 'rarely any direct evidence of an agreement to join a criminal conspiracy, and thus the defendant's assent can be inferred from acts which furthered the conspiracy's purpose.' " *United*

8

*States v. Miller*, 693 F.2d 1051, 1053 (11th Cir. 1982) (per curiam) (quoting *United States v. Middlebrooks*, 618 F.2d 273, 278 (5th Cir. 1980)). "The government need not prove that a defendant participated in every stage of the conspiracy or had direct contact with each of the other alleged co-conspirators," so long as the defendant "was aware of [the conspiracy's] essential nature." *Reeves*, 742 F.3d at 497-98.

The evidence at trial proved by a preponderance of the evidence that Fagundez, like his codefendants Nance and Cervantes, willfully joined the conspiracy. Most importantly, Nance clearly identified Fagundez as "Diego," the man who placed approximately 4,000 grams of methamphetamine in his car at the behest of Cervantes, also known as "Shorty." Additionally, several of the text messages and phone calls offered at trial referred to "Diego." Of particular note is Government Exhibit 2, a phone call between Nance and Cervantes on November 29, 2019. The transcription below is what was provided by

9

the government to the jury to refer to while the audio of the call was played:

"Cervantes -      Nah nah no I talking about Deiago our boy

"Nance -          Oh whats he doing?

"Cervantes -      Huh, he is fucking in jail

"Nance -          Noooo, For what?

"Cervantes -      yeah, for fucking hitting his girl

"Nance -          No he didnt

"Cervantes -      Yeah bruh that nigga is fucking, do you know how bad this shit could have turned out bruh

"Nance -          Man they could have fucking searched his house and everything

"Cervantes -      I told him that what I fucking telling his girl too, Im trying to tell her, I was like why would you even do that man, I understand he hit you and whatever, yall got into it I'm like you cant be doing that dumb shit because if they would have fucking searched that house you would have went down with him

10

"Nance -              Yeah I mean its hard to say though , if she didnt know about that

"Cervantes -          huh?

"Nance -              It would have been hard to say that she didn't know about that

"Cervantes -          I mean , he wasnt going to take the blame for that I mean that bitch going to put him in jail he is going to be like that bitch did know about it then they got fucking cameras in house and you know it recorded everything so they looked at the cameras and it could have went bad you know but she said they just took them and that was it and his charges I mean nothing like that came up you know It was Battery Battery family or some shit like that

"Nance -              Damn, she gonna get him out

"Cervantes -          Huh?

"Nance -              Is she gonna get him out

"Cervantes -          Ugh thats what Im trying to figure out right now cause I mean it says he had got released but then he had another charge in another charge in another county, pretty sure they charged him but both of them said he had

|||
|---|---|
| | got bailed out so I don't know what the fuck is going on probably going to have to drive to his moms house see if he knows something so hold on before you head this way , and all the shit that's in there that literally bruh everything is in the fucking house |
| "Nance - | Well I still got some shit left over anyway I was just coming over there to fucking pay you anyway, you see what Im saying." |

Ex. 2, page 354-55 of 918.

Government Exhibit 2 corroborates Nance's testimony that "Diego" was involved in the conspiracy. Nance and Cervantes clearly believed that "Diego" had narcotics in his residence. Nance's identification of Fagundez as "Diego" was subject to cross-examination. The Government met its burden of establishing that Fagundez willfully joined the conspiracy.

### C. Statements in Furtherance of Conspiracy

The statements made between Nance and Cervantes and offered at trial satisfied the third condition for

12

admissibility under Federal Rule of Evidence 801(d)(2)(E), requiring that they were "made during the course of and in furtherance of the conspiracy." *Underwood*, 446 F.3d at 1345-46. Nance, who was a participant in each conversation involving the statements, testified to what he understood "Shorty's" statements to mean as well as what he meant by each of his statements.

In sum, the statements revolved around Nance ordering quantities of methamphetamine from "Shorty" that he intended to distribute in Alabama as well as Nance and "Shorty" discussing payments owed by Nance to "Shorty" for methamphetamine "Shorty" had previously provided Nance. Such statements were clearly in furtherance of a conspiracy to possess with intent to distribute methamphetamine.

## II. CONCLUSION

For the foregoing reasons, the court found that the government proved by a preponderance of the evidence that

13

**Fagundez participated in a conspiracy involving at least Cervantes ("Shorty") and Nance, and it concluded that any co-conspirator statements entered into evidence against Fagundez were admissible.**

**DONE, this the 17th day of August, 2023.**

                                           /s/ Myron H. Thompson
                                    **UNITED STATES DISTRICT JUDGE**